RECEIVED
IN ALEXANDRIA, LA

AUG 24 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

**GIGI TRUMPS**
**Appellant**

**CIVIL ACTION**
**NO. 06-1651**

**VERSUS**

**JO ANNE B. BARNHART**
**COMMISSIONER OF SOCIAL SECURITY**
**Appellee**

**JUDGE DEE D. DRELL**
**MAGISTRATE JUDGE JAMES D. KIRK**

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

On June 17, 1976, an application for Title XVI supplemental security income payments (child's benefits) was filed on behalf of Gigi Pomes[1], and a determination was made that the onset date of her disability was June 1, 1976. On July 15, 1992, claimant filed an application for childhood disability insurance benefits under Title II of the Social Security Act. In conjunction with the processing of her Title II claim was a continuing disability review as to her Title XVI benefits. Claimant's disability was found to have ceased as of April 1, 1993 with eligibility for benefits terminating at the end of June, 1993.

A reconsideration determination was made and the claimant

---

[1] Gigi Pomes married Truman J. Trumps, Jr. on June 16, 1998 and took his name legally. Accordingly, she will be referred to throughout this Report and Recommendation as Gigi Trumps ("Trumps").

filed a request for hearing on May 9, 1994. Due to an administrative error, claimant was not granted a hearing until August 5, 2004. (R. 53-54). Present at that hearing were Trumps, her attorney, Robert Beck, Jr., and her father, Linsley Pomes. (R. 275). An unfavorable decision was rendered on September 24, 2004 by Administrative Law Judge, Lawrence T. Ragona ("ALJ"). (R. 216-229). Claimant timely requested review by the Appeals Council which was granted on February 11, 2005. The Appeals Counsel vacated the decision of the ALJ and remanded the matter for further proceedings and a new decision. (R. 240-242).

A second hearing was held on September 19, 2005 before ALJ Ragona. Present at that hearing were Trumps, her attorney, Mr. Beck, psychologist, Daniel Lonowski, Ph.D., P.C., and vocational expert, Lester Soileau. (R. 308). The ALJ issued a decision on October 28, 2005 advising that Trumps' disability ceased as of April 1, 1993 and she was not entitled to a period of disability, disability insurance benefits, childhood disability benefits or supplemental security insurance payments. (R. 12-27).

Trumps requested a review of the ALJ's decision on July 27, 2006. (R. 8). The Appeals Council declined review, and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). (R. 6-8). Thereafter, Trumps filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for SSI and/or DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

SUMMARY OF PERTINENT FACTS

At the time of the August 5, 2004 hearing, Trumps was thirty years old and lived with her husband and four children in Tioga, Louisiana. (R. 278-279). Her husband had recently been involved in an automobile accident which rendered him mentally incompetent, so neither he nor Trumps were employed. (R. 280). He received worker's compensation benefits from a prior work related accident as well as social security benefits related to the head injury he sustained in the non-work related automobile accident. (R. 280).

Trumps graduated from high school and attended vocational classes for word processing. (R. 281). Her employment history consisted of only two jobs; one at Joe's Display in Shreveport for a few weeks decorating Christmas trees with lights and the other at

Burger King for six months when she was nineteen years old. (R. 282). Trumps' employment at Burger King was short lived due to the anxiety she felt after wrongly being accused of eating on the job. The hemangioma on her tongue made it appear as though Trumps had food in her mouth when in fact she did not. She testified that her fear of having to interact with the public and the humiliation she felt after being accused of eating on the job prevented her from returning to work. (R. 203, 330). This fear of returning to work in any position continues because she fears having to interact with the public and facing social ridicule. (R. 203, 322-323, 339).

Trumps testified that she always had problems with anxiety. (R. 286). She was only comfortable around her family and a few people from church and the church-based school she attended. Trumps stated and Dr. Lonowski confirmed that her anxiety revolved around the fear that she might have to interact with someone she did not know, they would notice her hemangioma and react adversely to her. Accordingly, she had to have someone who could speak for her any time she was out in public. (R. 289, 300).

Trumps testified the hemangioma caused her tongue to swell a couple of times a month for several days. (R. 292). When it did, she would put herself to bed as it was painful, bled, caused her to become nauseous and prevented her from consuming anything but liquids. (R. 296). In this state, she was unable to care for her children, so she called upon her father and step-mother, and

occasionally her mother, to help her with her children and household chores. (R. 297, 298). Her father verified the extent to which suffered from the hemangioma as well as how often he and his wife helped Trumps care for her family during those times. (R. 304). He also affirmed that Trumps needed comforting when she felt anxious or ill. (R. 303).

Dr. Lonowski saw Trumps on June 17 and July 12, 2004 for an evaluation. During the visits, he conducted a mental status exam, a clinical review and psychometric testing. In his report, Dr. Lonowski set forth the results from the testing as well as his findings and ultimate diagnosis. (R. 202-206). These results were discussed during the second hearing which was held on September 19, 2005.

At that time, Trumps was 31 years old and lived with her husband and five children. (R. 315). Trumps testified that she continued to care for her children and household chores, but she still only shopped with her husband. (R. 319-320). She also continued to attend church but did not socialize with these friends outside of church. (R. 320).

She advised that her inability to be around strangers intensified over the years. She did not take her children to school or talk to her neighbors, she only attended school conferences with her husband, and she only wanted to be around those she knew and who knew about her condition. (R. 321-323).

At the hearing, Dr. Lonowski advised that the results of the psychometric testing confirmed the accounting made to him by Trumps regarding her symptoms and problems. That was, the tests showed, among other things, that Trumps found it difficult to be in the presence of others, was highly dependent upon others, was socially tense and isolated, was extremely anxious and depressed, would scan for potential threats and suffered episodes of trembling or shaking, nervousness, jumpiness and/or worry. (R. 204-205). Based upon his these results and that obtained during the interviews, Dr. Lonowski diagnosed Trumps with an anxiety disorder which showed signs of mixed anxiety and depressive symptoms as well as social phobic symptoms. (R 313).

Dr. Lonowski discussed the fact that Trumps never became comfortable during her visits with him which indicated she was under severe stress. This stress was so severe that he had to institute a relaxation and breathing procedure so she would not hyperventilate and pass out. (R. 202, 337). He advised that Trumps had and would continue to have great difficulty functioning outside of the home or an extremely supportive environment outside of the home. (R. 314). In fact, he stated Trumps would experience a response similar to that she experienced with him when interacting with strangers. Finally, Dr. Lonowski advised that because the hemangioma (the source of her anxiety) was persistent, counseling would not help to alleviate her anxiety. (R. 341).

Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not

supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

ISSUES

Trumps raised the following issues for review:

1. The ALJ's conclusion that claimant was only mildly limited in her ADL's is not supported by substantial evidence and does not comport with 12.00 Section (C)(1).

2. The ALJ's determination that claimant is only moderately impaired in social functioning is not supported by substantial evidence and fails to apply the directives of 12.00(C)(2).

3. The ALJ's determination that claimant was capable of work involving limited interaction with the public is contradicted by the record as a whole and not supported by substantial evidence.

4. The ALJ's hypothetical to the VE fails to include well documented functional limitations and was therefore irrelevant.

Listing 12.06 - Anxiety Related Disorders

Trumps contends that the ALJ erred in determining that she failed to meet Listing 12.06 for Anxiety Related Disorders. The claimant bears the burden of proving that her condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885, 891-892, 107 L.Ed.2d 967 (1990). Also, Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990). Where

the impairment is severe, the Commissioner must determine whether the impairment is so severe that the claimant will be presumed to be disabled. This determination is made by comparing the impairment to a specific Listing of Impairments in the Social Security Administration regulations. See, 20 C.F.R. §404, Subpart P, Appendix 1. If the claimant's condition is listed, or is medically equivalent to a listed impairments, the claimant is conclusively determined to be disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders, 914 F.2d at 619, n.1. The ALJ is charged with carefully considering all of the evidence and linking his findings to specific evidence. Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).

In the case at bar, the ALJ considered the requirements set forth in parts A and B of Listing 12.06. He found that Trumps failed to meet the requirements of part B as she was only mildly limited in activities of daily living; moderately limited in social function and mildly limited with respect to maintaining concentration, persistence or pace. He further determined that Trumps never had an episode of decompensation of extended duration. (R. 19).

In providing his reasons why Trumps failed to satisfy the requirements of part B, the ALJ noted she could perform activities of daily living inside her home and she could dine out with her family at restaurants. Listing 12.00(C)(1) sets forth a non-

exhaustive list of adaptive activities which represent activities of daily living. Noted thereafter is the fact that it is not the number of daily activities which one can perform that defines whether or not he or she is "marked". Rather, it is the "nature and overall degree of interference with function" which is accessed. 20 C.F.R. §404, Subpart P, Appendix. 1, Listing 12.00(C)(1).

Trumps testified that she does not do any shopping, attend her children's school conferences, go to restaurants or go to the zoo without someone by her side. Dr. Lonowski noted in his report that Trumps insisted her stepmother remain throughout their interview, and despite the fact she did, Trumps could never relax or make eye contact with him.[2] He found Trumps unable to engage in routine activities that involved interaction with the general public, including taking public transportation. Trumps is driven by a compelling desire to avoid social interactions . Accordingly, she cannot independently, appropriately, effectively or on a sustained basis perform those activities of daily living which require her to leave her home.

The same is true with respect to her social function. She must have someone with her whether she is at church with her

---

[2] The ALJ stated in his decision that Trumps was able to interact at two hearings and during interviews with Dr. Lonowski. However, Dr. Lonowski's report and testimony as well as the ALJ's inquiry during the hearing as to whether or not Trumps needed to take a break indicate otherwise.

friends or at a restaurant with her family. Otherwise, she might have to interact with a stranger who would notice and react adversely to her hemangioma. Trumps acknowledged that her only social interaction is with her family and those times she sees her small group of friends at church. She does not speak to her neighbors and when she encounters a stranger, she does not maintain eye contact, becomes nauseated, has trouble breathing and does not speak.

The ALJ's sole justification for his determination that she is moderately limited in social function was that she could dine with her family at a restaurant. There is no indication in the record that Trumps in fact dined with her family, only that she went to restaurants on occasion with her family. Given Trumps anxiety with respect to the hemangioma, her fear that someone might see it and the fact that when she does speak, she does so through clenched teeth, further indicates she would not have dined in a public place. Regardless, in light of the other evidence regarding Trumps' fear of strangers, the extremes she goes through to avoid social interaction and maintain her social isolation, it is evident that Trumps has marked limitations with respect to social function.

The ALJ also noted in his decision that he gave Dr. Lonowski's opinion no significant weight because they were based upon Trumps' subjective complaints. As stated before, Dr. Lonowski's opinion was based upon his interviews with Trumps as well as results from

four different psychometric tests. The results of these tests, specifically the Myers-Briggs Type Indicator, Minnesota Multiphasic Personality Inventory, Million Clinical Multiaxial Inventory and Trauma Symptom Inventory, confirmed the veracity of Trumps subjective complaints. Because Dr. Lonowski's opinion is the only psychological evidence in the record, his conclusions are supported by appropriate evidence and his conclusions are not contradicted anywhere in the record, substantial evidence does not support the ALJ's finding.[3]

Finally, despite the fact Listing 12.06 provides that a claimant may meet the listing by satisfying *either* the requirements set forth in parts A and B *or* the requirements set forth in parts A and C, the ALJ never examined whether or not Trumps met the requirements of part C. Part C of Listing 12.06 provides that the claimant's anxiety results in a complete inability to function independently outside the area of one's home. As set forth above, Trumps does not venture into public without having a family member or close friend to interact for her. Her anxiety prevents her from

---

[3] It is further noted the ALJ failed to fill out a psychiatric review technique form in this case, as required by 20 C.F.R. § 416.920a. The purpose of the psychiatric review technique form is to assist the SSA/ALJ to identify the need for additional evidence to determine impairment severity, consider and evaluate functional consequences of the mental disorder relevant to the claimant's ability to work, and organize and present findings in a clear, concise, and consistent manner. 20 C.F.R. § 416.920a(a).

being able to take care of daily activities outside of the home or from interacting with those she does not know. Accordingly, she is unable to function independently outside the area of her home and meets the requirements of part C.

Accordingly, substantial evidence supports a finding that Trumps meets Listing 12.06 for Anxiety Related Disorders. Trumps is conclusively determined to be disabled, and all remaining issues raised by her herein are moot.

Trumps should be awarded benefits and this case should be remanded to the Commissioner for a determination as to the date of disability as well as a calculation of benefits and payment thereof.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Trumps appeal be GRANTED; the final decision of the Commissioner be REVERSED AND VACATED; and, the case be REMANDED for further proceedings consistent with the views expressed herein. IT IS FURTHER RECOMMENDED that the Commissioner make a determination as to the date of disability and calculation of benefits within ninety (90) days and this Court retain jurisdiction over the matter during the remand period.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from

service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 24th day of August, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE